Tara CARTIER; Donald Coates,
Plaintiffs–Appellees,

v.

Paul D. LUSSIER, individually and in
his official capacity, Defendant–
Appellant.

No. 473, Docket 91–7590.

United States Court of Appeals,
Second Circuit.

Argued Nov. 7, 1991.

Decided Feb. 5, 1992.

Scott M. Karsten, West Hartford, Conn.
(Sack, Spector & Barrett, of counsel), for
defendant-appellant.

John R. Williams, New Haven, Conn.
(Williams and Wise, New Haven, Conn.,
Jacques J. Parenteau, Greenberg, Steen-
burg and Parenteau, P.C., New London,
Conn., of counsel), for plaintiffs-appellees.

Before KAUFMAN *, CARDAMONE,
and MINER, Circuit Judges.

* Due to the death of Honorable Irving R. Kauf-    man, subsequent to the oral argument but be-

CARDAMONE, Circuit Judge:

Plaintiffs, Tara Cartier and Donald Coates, her brother, commenced this 42 U.S.C. § 1983 civil rights action against Paul D. Lussier, a Connecticut State Trooper. Plaintiffs allege that defendant lacked probable cause to arrest them following the death of Christopher Izzo, who was present in an automobile with plaintiff Cartier when a fatal accident occurred. Coates witnessed the accident. In his motion for summary judgment dismissing plaintiffs' action, Lussier asserted that qualified immunity barred suit against him, and thus he was entitled to judgment as a matter of law. The United States District Court for the District of Connecticut (Nevas, J.) found material issues of fact precluded the application of qualified immunity and therefore denied the motion. The district court believed the mantle of qualified immunity with which public officers are enveloped simply melts away in the heat of controverted facts. We think rather the rule is when, as here, the factual disputes are immaterial to resolving the qualified immunity issue, its protective mantle remains undissolved.

## BACKGROUND

On September 9, 1986 a two-car collision occurred at an intersection in the Town of North Stonington, Connecticut. Officer Lussier was dispatched to the scene. There the trooper interviewed Gary Stanley, the driver of one vehicle, Tara Cartier—who was accompanied by Christopher Izzo in the other vehicle—and Donald Coates, who claimed he witnessed the accident. The accident occurred when the vehicle containing Cartier and Izzo went through a stop sign and flashing red light into the intersection where it was broadsided by the Stanley vehicle. Izzo, who was lying on the ground unconscious, never regained consciousness, and died several weeks later. The trooper commenced an investigation of the fatal accident which led to the arrest of Tara Cartier for negligent

homicide with a motor vehicle and for filing a false statement, and to the arrest of her brother Donald Coates for filing a false statement. This investigation and the resulting arrests—and the facts that Lussier set forth in the affidavit in support of the arrest warrants—are the focus of the present litigation.

At the scene of the accident, the then 17–year–old plaintiff Cartier told Lussier that 19–year–old Izzo was the driver of her vehicle when the accident occurred. Coates corroborated his sister's version, stating he observed Izzo driving Cartier's auto at the time of the accident. Although he originally said "I know my sister stopped because I saw the brake lights," when the trooper stated "So Tara was driving," Coates rejoined that he was referring to the car, and that Izzo was driving. This inconsistency led the officer to believe Coates was not telling the truth. Stanley, the driver of the other car approaching from the right or passenger's side where the impact occurred declared that he saw the "horrified look on the face of a male" who was in the passenger side of the car prior to impact. During the course of his investigation, which is required under Connecticut law in the case of a fatality, *see* Conn.Gen.Stat. § 14–108a(b), Lussier obtained written statements from each of these three witnesses.

He also interviewed Catherine Orr, the plaintiffs' mother, who stated that when Izzo and her daughter Tara left home five minutes before the accident, Izzo was driving. Willard Wilkinson, a friend of Cartier's and Coates', signed a statement stating that a few minutes before the fatality—about 1.5 miles from the scene—he saw Tara Cartier drive by in her gray Toyota, and she waved to him. Months later at the criminal trial Wilkinson disputed the accuracy of his signed statement, alleging that he did not tell Lussier who was driving the vehicle and that he did not read the statement that Lussier prepared before signing it.

fore he had an opportunity to review this opinion, it has been decided by the two remaining members of the panel pursuant to § 0.14(b) of

the Rules of the United States Court of Appeals for the Second Circuit.

As part of his investigation and with the assistance of State Trooper Jeffrey Megin, Trooper Lussier searched the automobile and found short black hair—correlating with Izzo's and not matching the blond hair of Cartier—imbedded in damaged plastic molding on the passenger side of the car. The officers determined that the deceased had suffered a head injury of a type corresponding to an impact with the molding at the spot where the hair was found. Tests performed by the state's forensic laboratory after the arrests were inconclusive, failing to establish either that the hair was or was not Izzo's. Officers Lussier and Megin also performed an accident reconstruction that led them to believe that Izzo could not have been driving at the time of the accident. Plaintiffs submitted an affidavit of a forensic engineer contesting the validity of the officers' reconstruction report, asserting it was contrary to the laws of physics and the evidence gathered at the scene.

Following Izzo's death, Lussier prepared and submitted affidavits on October 9, 1986, seeking arrest warrants from a Connecticut judge for Cartier and Coates. The warrants were executed on October 26. The charges against both plaintiffs for filing false statements eventually were dismissed. In November 1987, after a two-week jury trial, Tara Cartier was acquitted of negligent homicide.

Plaintiffs then commenced the present civil rights action against Trooper Lussier pursuant to 42 U.S.C. § 1983 and Connecticut common law, alleging that he lacked an objective basis to conclude that probable cause existed to support the issuance of the arrest warrants. They challenge the validity of the warrants' supporting affidavits, contending Lussier intentionally or recklessly misrepresented certain facts and omitted others, specifically that he misrepresented the statements provided by Coates and Wilkinson and omitted the statement provided by Orr. They also contest Lussier's accident reconstruction and the conclusions he drew based on the forensic evidence gathered at the scene.

In his summary judgment motion defendant asserted the plaintiffs' suit was barred by the doctrine of qualified immunity because an objective basis existed for finding probable cause for the arrests. After initially denying the defendant's motion, the district court granted a motion to reconsider, based on our recent decision in *Magnotti v. Kuntz,* 918 F.2d 364 (2d Cir. 1990). On May 17, 1991 it reaffirmed its prior decision denying defendant's motion and entered judgment on May 20, 1991. From this judgment Lussier appeals. We reverse.

## DISCUSSION

### A.

The defense of qualified immunity is a well-settled doctrine that protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (citing *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39).

A subjective inquiry into an official's personal belief is rejected in favor of an objective analysis of what a reasonable officer in defendant's position would believe. In the context of an allegedly unconstitutional arrest, the objective reasonableness standard bars the defense of qualified immunity "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986).

Thus, even where the law and the scope of permissible official conduct are clearly established, the defense of qualified immunity will protect a government official if it was "objectively reasonable" for him to believe his acts were lawful.

Qualified immunity for government officials—which applies only in suits against officials in their personal capacity, *see generally Kentucky v. Graham*, 473 U.S. 159, 165–68, 105 S.Ct. 3099, 3104–07, 87 L.Ed.2d 114 (1985)—serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expense of litigation. *See, e.g., Warren v. Dwyer*, 906 F.2d 70, 74 (2d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). The doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their positions of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. *See Creighton*, 483 U.S. at 638–39, 107 S.Ct. at 3038–39; *Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736. If public officials were not protected from the threat of frivolous suits, the cost to society would be substantial, ranging from an inability to attract qualified candidates to serve in public positions, to a diversion from the discharge of official duties and towards the avoidance of litigation, to inhibiting the zealous performance of official obligations. *See Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736. Qualified immunity therefore treads a careful path between the Scylla of allowing guilty public officials to escape liability and the Charybdis of being unable to attract qualified persons to public service.

◼ The Supreme Court has expressly encouraged the use of summary judgment when qualified immunity is raised as a defense. The objective reasonableness test was designed to facilitate this summary device as a means quickly to extricate government officials from defending insubstantial suits. *Id.* at 815–16, 102 S.Ct. at 2736–37; *Butz v. Economou*, 438 U.S. 478, 507–08, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978). It is well settled under the collateral order doctrine that the denial of summary judgment based on the issue of qualified immunity, though technically interlocutory, is reviewable by an appellate court. *See, e.g., Kaminsky v. Rosenblum*, 929 F.2d 922, 925–26 (2d Cir.1991); *Magnotti*, 918 F.2d at 366–67. Appellate jurisdiction is conferred, despite the absence of a final order, in order to preserve effectively the viability of the doctrine's protections. Were it otherwise, insulation from meritless litigation would be lost. Our jurisdiction is nevertheless limited to circumstances where the qualified immunity defense may be established as a matter of law, *see, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 526–30, 105 S.Ct. 2806, 2815–18, 86 L.Ed.2d 411 (1985); *Kaminsky*, 929 F.2d at 926; *Dwyer*, 906 F.2d at 74, or the trial court has committed fundamental error in applying the law. *See Washington Square Post No. 1212 v. Maduro*, 907 F.2d 1288, 1292 n. 1 (2d Cir.1990).

On the other hand, if a factual determination is a necessary predicate to the resolution of whether qualified immunity is a bar, review is postponed. *See Magnotti*, 918 F.2d at 367; *P.C. v. McLaughlin*, 913 F.2d 1033, 1039 (2d Cir.1990); *Dube v. State University of New York*, 900 F.2d 587, 595–96 (2d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991). Whether disputed facts are material to resolving the applicability of the doctrine is a legal question subject to our *de novo* review.

### B.

◼ In the present case the district court failed adequately to consider whether the factual disputes were material. It found the affidavits—specifically those submitted to obtain the arrest warrants—had been controverted and failed to establish the existence of probable cause. It therefore held summary judgment inappropriate, and concluded that only after the jury resolved the fact issues and determined what facts "should have been included or excluded in the corrected warrant application [could the court] decide the issue of qualified immuni-

ty as a matter of law." This holding was error.

Rule 56(c) of the Federal Rules of Civil Procedure provides "that summary judgment shall be rendered only when a review of the entire record demonstrates that there is no genuine issue as to any material fact." In deciding the motion, factual allegations backed by affidavits or other evidence made by the party opposing the motion are regarded as true, *see Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983), and are viewed in the light most favorable to the non-movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

■ In the procedural context of Rule 56(c), if—even when all facts as alleged by the nonmoving party are regarded as true—the moving party is still entitled to judgment as a matter of law, then factual disputes however genuine are not material, and their presence will not preclude summary relief. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment"); *Knight v. United States Fire Insurance Co.*, 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985); *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) ("it must be remembered that the mere existence of factual issues— where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment").

When a motion for summary judgment is made in the context of a qualified immunity defense, the question of whether the factual disputes are material is even more critical. Plaintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless not material to the ultimate resolution of the immunity issue.

In that connection the Supreme Court teaches as follows: allegedly false material is set aside and those facts allegedly omitted—if accompanied by a sufficient statement of supporting reasons—are substituted to see if the contents of the affidavit as amended support a finding of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978). In *Magnotti*, 918 F.2d 364, we reversed a district court's denial of summary judgment on the qualified immunity issue in a retaliatory arrest civil rights action. We stated that the objective reasonableness standard requires the granting of summary relief "if the affidavit accompanying the warrant is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed." *Id.* at 368.

In the case at hand, after the affidavit has been corrected in a light most favorable to the plaintiffs, the district court should then have determined whether as a matter of law it did or did not support probable cause. Omitted facts that should now be considered include the statement of Cartier's mother that Izzo was driving when the pair left her home, both plaintiffs' statements that Tara Cartier was not driving, and Wilkinson's statement that he only saw the vehicle pass but did not notice who was driving. The undisputed facts that remain include the Stanley statement, the head injury to Izzo, the damaged molding on the passenger side of the vehicle and the apparently matching hair found there.

After performing this correcting process, if there remains an objective basis supporting probable cause, no constitutional violation of the plaintiffs' Fourth Amendment rights has occurred, the factual disputes are not material to the use of the qualified immunity defense, and summary judgment should be granted to the defendant. Only if the corrected affidavit did not support an objective finding of probable cause would the factual disputes be material to resolving the issue of probable cause. In that case, summary judgment must be denied and these factual issues involving the im-

munity doctrine would be submitted to the jury.

When it denied summary judgment and decided to submit interrogatories to the jury, the trial judge recognized the applicable rules of law, but failed to determine expressly whether the facts in the probable cause affidavit altered by the correcting process did or did not support an objective basis for finding probable cause. Government officials protected by qualified immunity from litigating insubstantial claims are entitled, at a minimum, to have this threshold determination expressly made in the record. Without such an express finding, we may not assume it was made. This failure by the district court constituted a fundamental error in applying the qualified immunity doctrine. *Cf. Washington Square Post No. 1212*, 907 F.2d at 1292 n. 1.

Plaintiffs also argue that where the defendant commits deliberate or intentional misrepresentations, *Rivera v. United States*, 928 F.2d 592 (2d Cir.1991), requires the automatic loss of the qualified immunity shield. Under *Harlow*, "an allegation of malice is *not* sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096 (emphasis added) (qualified immunity available to officer who obtained arrest warrants based in part on wiretaps, under the objective reasonableness test). Again, in a case involving the suppression of evidence, the Supreme Court wrote, "where [a party] makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at [that party's] request." *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77.

Implicit in this statement is the proposition that, after the affidavit is corrected for intentional misstatements and omissions, if it still supports probable cause no Fourth Amendment violation has occurred. *Riv-era* is not to the contrary. There we recognized that the "allegedly false statement [must be] 'necessary to the finding of probable cause,'" 928 F.2d at 604 (quoting *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77), and that the intentional falsification must materially contribute to the objective basis for finding probable cause before the defense of qualified immunity will be barred. *Id. See also Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir.1985) (where "no accurate information sufficient to constitute probable cause attended the false statements," the officer preparing the warrant affidavit containing "solely" false statements cannot have acted in objectively reasonable manner and is not immune).

### C.

The law holds that summary judgment is not available if, after amending the probable cause affidavits, no reasonably competent state trooper would have sought an arrest warrant. On the other hand, when reasonable officers could disagree as to whether probable cause exists, the immunity defense is available. This rule governs the instant case. Adding in Cartier's, her brother's, and her mother's, statements that she was not driving at the time of the fatality and excising Wilkinson's statement does not change the result. The first three are all interested to some extent and Wilkinson, a friend of plaintiffs, gave two different statements—one to the trooper after the accident and another at Tara Cartier's trial for negligent homicide. None of these statements is entitled to as much credibility as that made by Stanley, the driver of the other vehicle, and the only disinterested witness who actually saw the accident unfold.

Plaintiffs urge in essence that testimony of relatives and a friend whose story was changed after the arrest warrant was obtained, and the fact that laboratory results were inconclusive should have caused Officer Lussier, an 18–year veteran Connecticut State Trooper, to ignore the statement of the eye-witness to this fatality, the damage to the plastic molding on the passenger side, and the accident reconstruction report

that corroborated the fact that Izzo was riding on the passenger side. Common sense further dictates that the greater injury would be found where the Cartier vehicle was struck, that is, on its right front passenger side.

In light of what this experienced trooper learned from his investigation it strikes us that the course he pursued was entirely proper under the circumstances. We think sufficient evidence remains, after correcting the affidavits, to constitute probable cause; reasonable troopers, at the very least, could well disagree whether or not it existed. Such is sufficient to establish the qualified immunity defense as a matter of law in defendant's favor.

### CONCLUSION

Accordingly, the judgment appealed from denying defendant's motion for summary judgment dismissing plaintiffs' action is reversed, and the case is remanded to the district court for it to grant the motion and to dismiss plaintiffs' complaint.