839 F.Supp. 1047 (1993)
Brett ELK, Plaintiff,
v.
Deputy Jeffrey TOWNSON, The County of Putnam, and the Putnam County Sheriff's Department, Defendants.
No. 92 Civ. 9138(VLB).
United States District Court, S.D. New York.
December 15, 1993.
*1048 *1049 Robert W. Folchetti, Stockfield & Fixler, Carmel, NY, for plaintiff.
Daniel A. Seymour, Servino & Seymour, White Plains, NY, for defendants.

MEMORANDUM ORDER
VINCENT L. BRODERICK, District Judge.

I
This case involves alleged violation of civil rights under 42 USC 1983 on grounds of false arrest and unreasonable search. The plaintiff Brett Elk ("Elk") brought this action against Deputy Sheriff Jeffrey Townson ("Officer Townson"), the County of Putnam (the "County") and the Putnam County Sheriff's Department (the "Sheriff's Department") (collectively, the "defendants"). The defendants have moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) and for summary judgment under Fed.R.Civ.P. 56(b) based on qualified immunity.
I consider both applications as motions for summary judgment[1] since both *1050 plaintiff and moving defendants have submitted affidavits and discovery has been completed. New York v. United States, 942 F.2d 114 (2nd Cir.1991), modified on other grounds ___ U.S. ___, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992); Hadges v. Yonkers Racing Corp., 733 F.Supp. 686 (S.D.N.Y.1990). I grant the defendants' motions.

II
In the early afternoon of February 11, 1992 Elk and his friend Oliver[2] drove in Oliver's BMW (the "BMW") toward the local high school, allegedly to play soccer. At about 1:30 PM, Oliver parked the BMW in the parking lot of a sandwich shop (the "shop") next door to the school. Deputy Sheriff (then Investigator) Townson was parked in the same lot in an unmarked police van about 75 feet away from the BMW, surveilling the lot for possible narcotics activity.
Officer Townson claims he observed Elk and Oliver smoking a marijuana cigarette immediately after parking the BMW.[3] Shortly thereafter, both Elk and Oliver got out and stood talking at the rear of the BMW. At about 1:40 PM a third person, William, came out of the shop and walked towards the BMW. Officer Townson claims that after a brief conversation William handed Elk money and Oliver handed William a quantity of what appeared to be marijuana in a plastic bag. Officer Townson radioed this information to two other officers (the "other officers") who were in the general vicinity.
Elk, denying that he was involved in any illegal activity, claims that immediately after entering the parking lot he and Oliver left the BMW and soon met William, to whom Elk was introduced. Elk states that he then walked by himself to the high school to find other soccer players but was unable to do so. According to Elk, he rejoined Oliver and William a short time later in the parking lot, where the three kicked a soccer ball around. All three men then left in Oliver's BMW, headed for the school fields.
What happened subsequently is undisputed. At about 2:00 PM, the other officers, responding to Officer Townson's call, followed the BMW and stopped it shortly thereafter. Officer Townson arrived a brief time later.
The other officers informed Officer Townson that the vehicle had been searched, and that a film canister containing an indeterminate quantity of marijuana had been found between Oliver and Elk, the two front-seat passengers, within easy reach of Elk. Five small bags of marijuana were taken from Oliver's person, and two five dollar bills were found in Elk's pocket.
All three occupants of the car were arrested and taken to the Sheriff's Department, where they were charged with criminal possession of marijuana in the fifth degree, under section 221.10 of the New York Penal Code, and criminal sale in the fourth degree, under section 221.40. On the arrest report, Elk initially gave his name as "Robert Elk".[4] Elk claims he was strip searched at the Sheriff's Department and then released.
Oliver pleaded guilty to criminal possession of marijuana in the fifth degree, N.Y.Pen.L. § 221.10, and William pleaded guilty to disorderly conduct. On October 7, 1992, Elk, who had no previous criminal record, signed a document releasing the District Attorney's office and the Sheriff's Department from civil liability in exchange for dropping the charges against him. Elk claims that he executed this release only because his attorney advised him that it was unenforceable. He then filed this lawsuit.

III
A threshold issue is whether the officers had probable cause to stop and search *1051 Oliver's vehicle and to arrest Elk. Under New York and federal law, claims for unreasonable search and false arrest must be founded on lack of probable cause. Soares v. Connecticut, 8 F.3d 917 (2d Cir.1993); Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir.1992); Golino v. New Haven, 950 F.2d 864, 870 (2d Cir.1991), cert. denied ___ U.S. ___, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992); (unreasonable search); Cameron v. Fogarty, 806 F.2d 380, 386 (2d Cir.1986), cert. denied 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987) (false arrest); Weber v. Dell, 804 F.2d 796 (2d Cir.1986), cert. denied 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).
Summary judgment is appropriate where there is an "absence of a genuine issue concerning any material fact". Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Credibility determinations ... are ... not those of a judge ... [when] ruling on a motion for summary judgment ..." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The nonmoving party may not defeat a motion for summary judgment by relying "simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. New York, 996 F.2d 522, 532 (2d Cir.1993); SEC v. Research Automation Corp, 585 F.2d 31, 33 (2d Cir. 1978).
Normally, if facts essential to support opposition to a summary judgment motion remain to be obtained, the nonmoving party may seek a continuance under Rule 56(f) to permit affidavits to be obtained or discovery to be had. Ying Jing Gan, 996 F.2d 522, 532 (2d Cir.1993); L & L Started Pullets, Inc v. Gourdine, 762 F.2d 1, 3-4 (2d Cir.1985); Wyler v. United States, 725 F.2d 156, 160 (2d Cir.1983). In this case discovery has been completed and both parties have had ample opportunity to uncover facts and evidentiary support for them.
When considering a police officer's affidavit in a section 1983 case on the matter of probable cause:
... allegedly false material is set aside and those facts allegedly omittedif accompanied by a sufficient statement of supporting reasonsare substituted to see if the contents of the affidavit as amended support a finding of probable cause. See Franks v. Delaware, 438 U.S. 154, 171-72, 98 S.Ct. 2674, 2684-85, 57 L.Ed.2d 667 (1978).... [After] the affidavit has been corrected in a light most favorable to the plaintiffs, the district court should then ... [determine] whether as a matter of law it did or did not support probable cause.
Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir.1992). Here, probable cause existed even looking at the facts in a light most favorable to the plaintiff.
Elk cannot contradict what the police saw in the car because he says he was not there and nor does he dispute that five bags of marijuana were found in Oliver's clothing. The officers testified without contradiction that Oliver's vehicle as well as all three individuals smelled strongly of burnt marijuana. Elk was present in a BMW that was stopped on a proper basis, and for which a warrantless search was appropriate. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); United States v. Mapp, 476 F.2d 67 (1973); People v. Belton, 55 N.Y.2d 49, 447 N.Y.S.2d 873, 432 N.E.2d 745 (1982).
Elk does not dispute that a canister of marijuana was found in the front seat space in the BMW next to him within his easy reach. Under such circumstances constructive possession could have been imputed to Elk, Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); People v. Blasich, 73 N.Y.2d 673, 543 N.Y.S.2d 40, 541 N.E.2d 40 (1989) (constructive possession); People v. Langen, 60 N.Y.2d 170, 469 N.Y.S.2d 44, 456 N.E.2d 1167, cert. denied 465 U.S. 1028, 104 S.Ct. 1287, 79 L.Ed.2d 690 (1983); People v. Belton, 55 N.Y.2d 49, 447 N.Y.S.2d 873, 432 N.E.2d 745 (1982); People v. Sierra, 45 N.Y.2d 56, 407 N.Y.S.2d 669, 379 N.E.2d 196 (1978) (constructive possession), providing a *1052 proper basis on which to arrest him.[5] Accordingly, there is no genuine issue to be tried and as a matter of law probable cause existed for Elk's arrest.

IV
Elk claims that a strip search performed at the Sheriff's Department was an unreasonable search violative of the Fourth Amendment. As an invasive procedure, a strip search requires probable cause. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Rivera v. United States, 928 F.2d 592 (2d Cir.1991); Walsh v. Franco, 849 F.2d 66, 69-70 (2d Cir.1988); M.M. v. Anker, 607 F.2d 588, 589 (2d Cir. 1979). Arrestees have a right, absent a reasonable suspicion of concealment of drugs or contraband, not to be subject to search by prison officials. Weber v. Dell, 804 F.2d 796, 802 (2d Cir.1986), cert. denied 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). The suspicion justifying the search must arise from the nature of the charge or the circumstances of the arrest. United States v. Montoya De Hernandez, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).
In this case, Elk's presence in a vehicle which smelled strongly of marijuana and in which marijuana was found both on another occupant and in a container located near him gave the Sheriff's Office reasonable grounds to suspect that Elk might be hiding drugs on his person.

V
Apart from whether or not there was probable cause for plaintiff Elk's arrest, Officer Townson has a valid defense of qualified immunity. Public officials are entitled to qualified immunity from liability for damages as long as their conduct does not violate clearly established statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Richardson v. Selsky, 5 F.3d 616 (2d Cir.1993); Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir.1993); Mozzochi v. Borden, 959 F.2d 1174, 1177 (2d Cir.1992); Cartier v. Lussier, 955 F.2d 841, 843 (2d Cir.1992). One has a right not to be arrested or prosecuted without probable cause. Soares v. Connecticut, 8 F.3d 917 (2d Cir.1993); Golino v. New Haven, 950 F.2d 864, 870 (2d Cir.1991), cert. denied ___ U.S. ___, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992).
Qualified immunity is available if it was objectively reasonable for the official to believe his acts were not unconstitutional. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); Frank v. Relin, 1 F.3d 1317 (2d Cir.1993); Hurlman v. Rice, 927 F.2d 74, 78 (2d Cir. 1991); Robison v. Via, 821 F.2d 913, 921 (2d Cir.1987). There is no distinction for purposes of immunity law between suits brought under section 1983 or directly under the Constitution. Harlow, 457 U.S. at 817 n. 30, 102 S.Ct. at 2738 n. 30, citing Butz v. Economou, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978).
When a valid defense of qualified immunity is raised, summary judgment is appropriate to eliminate meritless actions against public officials at early stages in litigation. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); Harlow, 457 U.S. at 815-16, 102 S.Ct. at 2736-37 (1982); Butz v. Economou, 438 U.S. 478, 507-8, 98 S.Ct. 2894, 2911-12, 57 L.Ed.2d 895 (1978); Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir.1992); Mozzochi v. Borden, 959 F.2d 1174 (2d Cir. 1992). Summary judgment may be proper in this context provided the defendant can establish that a reasonable officer could have believed a search or arrest comported with the Fourth Amendment. Anderson, 483 U.S. at 641, 107 S.Ct. at 3039-40.
Even evidence insufficient to sustain a finding of probable cause may be adequate to show qualified immunity. Warren v. Dwyer, 906 F.2d 70, 75 (2d Cir.), cert. denied 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990); Washington Square Post # 1212 American Legion v. Maduro, 907 F.2d 1288, 1289, 1292 (2d Cir.1990). The officer must show that (a) it was objectively reasonable to believe that probable cause existed, or (b) *1053 that officers of reasonable competence could disagree on whether the probable cause test was met. Robison v. Via, 821 F.2d 913, 921 (2d Cir.1987); see also Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
Even had there been doubt as to the existence of probable cause for the arrest and strip search of plaintiff Elk, summary judgment on the ground of qualified immunity is proper here in the absence of evidence that the officer's actions were unreasonable.

VI
A municipal governmental body may only be held liable for damages under 42 U.S.C. § 1983 if the plaintiff's harm was caused by a municipal "custom" or "policy" resulting in constitutional violation, or if the municipality is responsible for the harm or for constitutional violations resulting from failure to train municipal employees. Collins v. Harker Heights, ___ U.S. ___, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); see Monell v. New York City Dept. of Social Svcs., 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978). Liability under section 1983 is not vicariously imposed under the doctrine of respondeat superior. A municipal "policy" or "custom" must be the moving force behind the constitutional violation. Id.
The police officer having been exonerated in this case, only special circumstances would warrant imposing liability on a municipal agency, e.g., where multiple actors may have been collectively involved although none could be identified individually in a situation where substantial harm had been done. See Allen v. Yonkers, 803 F.Supp. 679 (S.D.N.Y.1992). The facts do not support a finding that either individual or collective municipal employees acted improperly.

VII
Release agreements in connection with dropping of criminal charges are valid if they are: (1) obtained by voluntary and informed action, (2) supported by legitimate law enforcement objectives or public interest motives and (3) untainted by prosecutorial misconduct. Newton v. Rumery, 480 U.S. 386, 396-97, 107 S.Ct. 1187, 1193-94, 94 L.Ed.2d 405 (1987).
Elk consulted with his parents and his attorney for two days before signing the release. He does not claim that he was unduly pressed into bargaining for his release from custody, nor does there appear to be misinformation supplied at the instance of any of the defendants.[6]
My finding that Elk's arrest was justified by probable cause adds substantively to the validity of the release-dismissal agreement. "`Where a criminal prosecution remains supported by probable cause, the Constitution does not necessarily prohibit the prosecutor from seeking a release-dismissal agreement with the criminal defendant.'" Mozzochi v. Borden, 959 F.2d 1174, 1181 (2d Cir.1992), quoting Newton, 480 U.S. at 397, 107 S.Ct. at 1194.
No evidence has been presented suggesting prosecutorial overreaching or misconduct that would justify rescinding a release-dismissal agreement. Newton, 480 U.S. at 397, 107 S.Ct. at 1194; Santobello v. New York, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); Schloss v. Bouse, 876 F.2d 287, 292 (2d Cir.1989). For example, a release may be invalidated if a prosecutor increases charges in response to a refusal to sign a release. United States v. Goodwin, 457 U.S. 368, 373, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982). If criminal charges were dropped to avoid challenges to conduct causing serious injury, resulting from violation of federal rights that would otherwise go undeterred, another result might be appropriate. *1054 Evidence of assault of the defendant or a pattern of civil rights violations may also cast an appearance of impropriety on a release-dismissal agreement. Cowles v. Brownell, 73 N.Y.2d 382, 540 N.Y.S.2d 973, 538 N.E.2d 325 (1989).
The existence of the release is not evidence of misconduct simply because such agreements provide law enforcement officers and agencies insulation from liability, nor does the mere opportunity for misconduct compel an assumption of abuse of discretion. Newton, 480 U.S. at 397, 107 S.Ct. at 1194. Obtaining a voluntary release in exchange for dropping criminal charges may be a valid part of a government attorney's functions. Id. at 393, n. 3, 107 S.Ct. at 1192, n. 3; Schloss, 876 F.2d at 292.
Elk claims his release-dismissal agreement served no legitimate law enforcement goals. To the contrary, resolving at the initial stages disputes not involving serious injuries serves significant public purposes. The bargain entered into with Elk was based on a legitimate and proper exercise of the prosecutor's judgment.
SO ORDERED.
NOTES
[1] The absence of a separate statement of material facts as to which the defendants contend there is no genuine issue to be tried does not necessarily require that a motion fail pursuant to Rule 3(g) of the Joint Rules for Civil Proceedings for the United States Districts Courts for the Southern and Eastern Districts of New York ("Local Rule 3(g)"). Local Rule 3(g) provides in relevant part that "[f]ailure to submit such a statement constitutes grounds for denial of the motion."

Plaintiff's contention that the language of this rule requires mandatory dismissal of an otherwise well-supported motion is unsubstantiated in light of the mandate of Fed.R.Civ.P. 8(f) that: "All pleadings shall be construed so as to do substantial justice." Elk has had adequate opportunity to provide depositions, testimony, and all evidence relevant to this case, and has responded to the allegedly defective motion. To deny defendant's motion on such insubstantial grounds would constitute the type of injustice sought to be avoided by Fed.R.Civ.P. 8(f).
[2] Only the first names of nonparties are set forth in this memorandum order.
[3] That day, Officer Townson, using a telephoto lens, had taken several photographs of an individual identified by Townson as Oliver in his BMW in the parking lot, but Townson states he ran out of film prior to an alleged smoking incident.
[4] Plaintiff Elk, whose first name is given as Brett, has neither disputed nor explained this disparity.
[5] "The presence of a controlled substance in an automobile is presumptive evidence of knowing possession by each and every person in the automobile." N.Y.Pen.L. § 220.25(1).
[6] Elk's claim that he only signed the release because his attorney advised him that it was unenforceable may give rise to a state claim against his attorney but does not, in light of the surrounding circumstances, render this agreement invalid.

Claims of ineffective assistance of counsel are governed by the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see Brown v. Doe, 803 F.Supp. 932, 940 (S.D.N.Y.1992). Defendant must demonstrate that counsel's performance was deficient and that errors made were unreasonable. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Elk has not made such a showing, nor has his former counsel been named as a defendant or deposed by Elk.