Geronimo VALDEZ

v.

CITY OF EAST HARTFORD, Mark
Kelly, Todd Hanlon, and Kurt
Stoldt.

No. CIV. 3:95CV668(AHN).

United States District Court,
D. Connecticut.

Sept. 29, 1998.

Humbert J. Polito, Jr., Jane Richardson, Faulkner & Boyce, P.C., New London, CT, Richard L. Zayas, Hartford, Lucia M. Mercurio, Burlingham & Mercurio, New London, for Plaintiff.

Stephen P. Fogerty, Thomas P. O'Dea, Jr., Halloran & Sage, Westport, for Defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

FITZSIMMONS, United States Magistrate Judge.

Geronimo Valdez brings this civil rights action against the City of East Hartford and three of its police officers for (1) deprivation of his civil rights in violation of 42 U.S.C. § 1983; and (2) various state law claims. Pending is defendants' Motion for Summary Judgment on all counts. For the reasons that follow, defendants' Motion [Doc. # 50] is **GRANTED.**

*STANDARD*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. School Dist.,* 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

In the context of a motion for summary judgment pursuant to Rule 56(c), disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law even if the disputed issues were resolved in favor of the non-moving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992). This distinction is particularly important in the context of a qualified immunity defense, which has been raised in this case by the defendants. In cases where a qualified immunity defense is raised,

the question of whether the factual disputes are material is even more critical

.... Plaintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless not material to the ultimate resolution of the immunity issue.

*Cartier*, 955 F.2d at 845.

## UNDISPUTED FACTS

This action is predicated on one incident. The following facts are not disputed.[1]

Geronimo Valdez is a black Puerto Rican and a resident of Hartford, Connecticut. [Amend. Compl. ¶¶ 1, 5].

Mark Kelly, Todd Hanlon and Kurt Stoldt[2] are police officers employed by the City of East Hartford, Connecticut. [*Id.* ¶ 2].

*Samuel McKnight: August 26, 1994*

On August 26, 1994, at approximately 5:57 p.m., defendant Mark Kelly was driving on Park Avenue, East Hartford during his patrol when he noticed a magenta Acura with New York registration K4S357 heading eastbound. [Def. Ex. A]. Officer Kelly testified that he checked the car's registration because it had an out-of-state registration and the appearance of the vehicle was "out of the ordinary." [Pl.Ex. C at 23] Police dispatch informed Officer Kelly that the registration he gave was for a 1978 two-door grey Chevrolet, and that the New York Motor Vehicle Department reported the registration was illegal and expired. [Def. Ex. A]. Officer Kelly approached the driver when he stopped at Roads Pizza on Park Avenue and requested documentation for the vehicle. *Id.* Officer Kelly described the driver as a black male. [Pl.Ex. C at 24]. No documentation was produced. [Def. Ex. A]. Officer Kelly drove the driver home to get identification. *Id.* The driver was unable to locate any identification at his home. *Id.*

The driver identified himself as Raymond Harrington with a date of birth of August 22, 1966. *Id.* A motor vehicles records check revealed that Raymond Harrington had a suspended license. *Id.* Officer Kelly then placed the driver under arrest for misuse of registration plates and operating under a suspended license. *Id.* His vehicle was left parked in a vacant lot next to Road's Pizza. *Id.*

At police headquarters, the driver informed Officer Kelly that he had provided a false name and identified himself as Samuel McKnight. *Id.* Officer Kelly added a charge of criminal impersonation. *Id.* Officer Kelly stated in his report that "[t]he first name the operator used is a real person with a criminal record who the operator says is a friend of his." *Id.* McKnight was held at police headquarters until proper identification could be made and bail could be arranged. *Id.*

*Samuel McKnight: September 30, 1994*

On September 30 at 8:49 p.m., Officer Kelly and another East Hartford Police Officer, Irwin, received information from a Hartford police officer that his agency was looking for Samuel McKnight, a primary suspect in a robbery that occurred in Hartford. [Def Ex. B]. Officer Kelly reported that

[a]ccording to the Hartford officer, Samuel McKnight got into a taxi in the Columbus Circle area (East Hartford) and took the taxi to Hartford. Allegedly while in the taxi Samuel McKnight was using cocaine. When the taxi got to Hartford and stopped to collect his fare, Samuel McKnight pulled a gun on the taxi driver and demanded money. Once he got the money he fled. Officer Irwin initially met with the Hartford officer then came into my beat, district 25, which is where Columbus Circle is located, and I learned of the robbery. I informed the Hartford officer that I had stopped Samuel McKnight a few weeks earlier and the Hartford officer, Officer

---

1. Considered were defendant's motion for summary judgment [Doc. # 50], statement of undisputed facts [Doc. # 51], memorandum in support of summary judgment [Doc. # 52], plaintiff's objection [Doc. # 57], memorandum in opposition to summary judgment [Doc. # 58], plaintiff's statement of material facts [Doc. # 59] and defendant's reply memorandum [Doc. # 60].

2. Although not raised on summary judgment, the Court notes that the record is devoid of any facts establishing the involvement of defendants Hanlon and Stoldt in the incident at issue in this litigation.

Irwin, and I then went to check Samuel McKnight's address but no one was home. I informed the Hartford officer and Officer Irwin that when I stopped Samuel McKnight on the 26th he was operating a magenta colored vehicle which had been modified with fender flares, custom paint, and fancy trim. Due to the modifications it is extremely difficult to identify the make and model of Samuel McKnight's vehicle without getting close enough to see the auto maker's emblem on the trunk lid.

*Id.*

*Geronimo Valdez: September 30, 1994*

Later in the evening of September 30, 1994, Officer Kelly "observed a magenta colored vehicle with custom paint, fender flares, and fancy trim, heading east on Park Ave." [Def. Ex. B]. Officer Kelly radioed police dispatch that he "was following a vehicle that matched the description of a vehicle which may be ... operated by Samuel McKnight who is considered armed and dangerous." *Id.* Officer Kelly followed the suspect vehicle and radioed his location as he headed east on Park Avenue, requesting other police units to assist before Kelly stopped the car. *Id.* The police log reflects that Officer Kelly's call was recorded at 21:58 p.m.

Officer Kelly's report states in relevant part,

The suspect vehicle then pulled into the Shell Food Mart on the corner of School St. and Park Ave. and I called off over the radio that the suspect vehicle was stopped ... Other officers simultaneously pulled into the parking lot at that time... I ordered the driver to stay where [sic] was and I approached the suspect vehicle with my weapon drawn out of my holster but pointed down by my side ... I ordered the driver out and I holstered my weapon as I guided him back to the rear of his vehicle and ordered him to his knees and hand cuffed him ... I could obviously see that the operator was not Samuel McKnight but the vehicle still appeared to be the same one McKnight operates and the mo-

tor vehicle records did not match the description of this particular vehicle. I still used caution as I did not know if this operator was an associate of McKnights. I quickly checked the vehicle for any other occupants and weapons. At this time I took the handcuffs off the operator and explained the situation to him. The operator acknowledged he understood. I also let him know that part of the problem was that his vehicle description doesn't match the registered description.[3] The operator conceded that he had not yet contacted motor vehicles to advise them that he had changed the appearance of his vehicle... I cleared the stop with "verbal" warning.

The radio logs show this clearance at 22:04 p.m. hours, approximately six and one-half minutes after the initial call. [*Id.; * Pl.Ex. A, B, D, E].

Plaintiff testified that he was driving a hot pink 1985 Toyota Corolla GTS with white trim, louvers, spoilers, high performance wheels, ground effects, hydraulics. [Pl.Ex. A at 30–33]. Plaintiff recalled an officer asking if plaintiff had a gun, about his beeper and requesting identification. [Pl.Ex. A 33, 38–39]. The police officers did not make any derogatory statements or use profanity. [Pl. Ex. A at 39, 50]. Anywhere from two to three officers had their weapons drawn until plaintiff was handcuffed. [Pl.Ex. A at 43–33].

*DISCUSSION*

*CIVIL RIGHTS VIOLATIONS: 42 U.S.C. § 1983*

■ Section 1983 states, in relevant part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

In order to state a claim under Section 1983, a plaintiff must allege a violation of rights

---

**3.** The color code on plaintiff's registration (grey) did not match the color of the car (hot pink).

[Pl.Ex. A at 51, Ex. B].

secured by the Constitution or laws of the United States and show that the violation was committed by a person acting under the color of state law. *See Greenwich Citizens Comm., Inc. v. Counties of Warren and Washington Indus. Dev. Agency,* 77 F.3d 26, 29–30 (2d Cir.1996).

### 1. *Fourth Amendment*

Plaintiff contends that he was wrongly subjected to a search and seizure in violation of his Fourth Amendment rights. Plaintiff argues that defendants should have used the least intrusive means available to verify or dispel the officers' suspicion.

▮ It is well established that in order to justify a stop of a suspect, an officer must have "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 20–1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Such suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Glover,* 957 F.2d 1004, 1009 (2d Cir.1992) (citations omitted). "If an investigative detention is properly premised upon articulable suspicion, the next inquiry is whether its scope and duration are reasonable." *United States v. Tehrani,* 49 F.3d 54, 58 (1995).

▮ The undisputed facts clearly demonstrate that the police had articulable suspicion. Plaintiff's vehicle was distinctly similar to a vehicle owned by a known black male with an outstanding warrant who had recently been observed in the area of Columbus Circle.

▮ This Court is also satisfied that the duration of plaintiff's detention did not convert it into a *de facto* arrest requiring probable cause. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow ... a criminal to escape." *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (multiple citations omitted). "A brief stop of a suspicious individual ... to maintain the status quo

momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Id.* (multiple citations omitted).

The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.... the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (*quoting Terry,* 392 U.S. at 21, 27, 88 S.Ct. 1868).

Plaintiff does not allege that the officers informed him that he was under arrest or that they told him that he could not leave. Rather, plaintiff argues that there was less intrusive means available to ascertain his identity and no reason to: (1) remove plaintiff from the car; (2) place him handcuffed on the ground; (3) search the car; and (4) surround plaintiff with officers with weapons drawn.

It is undisputed that after the officers stopped the plaintiff, they pursued their leads and ultimately determined that there was no probable cause to arrest Mr. Valdez. They determined from radio dispatch, a search of the car, and identification that Valdez was not linked to Samuel McKnight and that his car was not the same vehicle in which McKnight was last seen. Before the officers left the scene, Officer Kelly explained to Mr. Valdez the reasons for detaining him. Kelly also informed Valdez of the discrepancy on his registration.

At issue is whether the officers employed "the least intrusive means available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Plaintiff contends that this is an issue of fact not appropriately resolved on summary judgment. "In a section 1983 ac-

tion, it would usually be a jury's task to decide whether a detention amounted to a de facto arrest, since the issue of precisely when an arrest takes place is a question of fact." *Oliveira v. Mayer,* 23 F.3d 642, 645 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). (internal quotation marks and citation omitted).

 In assessing whether the degree of restraint is "too intrusive to be classified as an investigative detention," our Court of Appeals considers in general,

> the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, and in particular such factors as the numbers of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.

*United States v. Perea,* 986 F.2d 633, 645 (2d Cir.1993) (multiple citations omitted). "[T]he fact that the officers approached a stopped car with guns drawn in order to protect themselves and bystanders on the street [does not] necessarily transmute a *Terry* stop into an arrest." *United States v. Perea,* 986 F.2d 633, 644 (2d Cir.1993) [citing *United States v. Alexander,* 907 F.2d 269, 272 (2d Cir.1990) ("law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists."), *cert. denied,* 498 U.S. 1095, 111 S.Ct. 983, 112 L.Ed.2d 1067 (1991) ].

The articulable facts known to Officer Kelly when he spotted Valdez' vehicle on September 30 are as follows. First, Kelly did not know the identity of the driver when he radioed the dispatcher nor did Officer Kelly know the number of officers who would respond to the radio call. Even though Officer Kelly determined "immediately", upon visual contact, that the driver of the car was not McKnight, the officer did not know whether the car belonged to McKnight, whether McKnight was hiding in the car, or whether there was a gun in the car. The officer had been informed by the Hartford Police that McKnight was in possession of a hand gun during the commission of a crime and there was an outstanding warrant for his arrest. Officer Kelly also knew that he had stopped McKnight in a similar vehicle in the same neighborhood a month earlier. Defendants had reason to believe that McKnight would be carrying a gun on his person or in his vehicle and there was a possibility of danger in effectuating an arrest. Although plaintiff alleges that he was detained for up to one-half hour, the evidence presented by the times marked on the dispatch log suggest that plaintiff was held for approximately six minutes. Indeed, the officers holstered their weapons once plaintiff was handcuffed and released plaintiff once his identity was determined and a search for weapons complete.

 "A *Terry* investigative stop must be based on reasonable suspicion supported by articulable facts that criminal activity is afoot." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks and citations omitted). "An officer making a *Terry* stop must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Taylor,* No. 97CR0787, 1998 WL 75689, *4 (S.D.N.Y. Feb.23, 1998)(quoting *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks citations omitted). "A law enforcement [officer], faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exits." *United States v. Alexander,* 907 F.2d 269, 272 (2d Cir.1990), *cert. denied,* 498 U.S. 1095, 111 S.Ct. 983, 112 L.Ed.2d 1067 (1991)(multiple citations omitted).

Other Courts have found an intrusive detention to be only a *Terry* stop where police had a reasonable basis to believe the suspect was armed or otherwise dangerous. *See Dempsey v. Town of Brighton,* 749 F.Supp. 1215 (W.D.N.Y.1990) (held an investigatory stop where the suspects were handcuffed only briefly and the police only conducted a pat-down frisk for weapons; the police con-

clusively knew that an armed robbery had taken place), *aff'd without opinion,* 940 F.2d 648 (2d Cir.), *cert. denied,* 502 U.S. 925, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991); *see, e.g., Alexander,* 907 F.2d at 272 (agents approached car with guns unholstered, ordered defendant to exit car and frisked defendant did not amount to an arrest under the circumstances); *United States v. Nargi,* 732 F.2d 1102, 1106 (2d Cir.1984)("A display of guns by the police ... does not automatically convert a stop into an arrest."); *United States v. Merkley,* 988 F.2d 1062, 1064 (10th Cir.1993)(holding use of firearms was reasonable under the circumstances); *Courson v. McMillian,* 939 F.2d 1479, 1495–96 (11th Cir.1991)(weapon drawn and detainees ordered to lie on the ground found reasonable); *United States v. Alvarez,* 899 F.2d 833, 838–39 (9th Cir.1990)(order to exit car at gun point does not convert stop into an arrest), *cert. denied,* 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991).

▮ In this case, the defendants had reasonable grounds for believing that the plaintiff, if identified as Samuel McKnight or connected to him, was armed or otherwise dangerous. Plaintiff argues that "the police had no reason to believe that Geronimo Valdez had been involved in or was wanted in connection with any crime." [Doc. # 58 at 4]. However, this argument misses the relevant inquiry, *i.e.,* whether it was reasonable under the circumstances for defendants to believe that they were stopping Samuel McKnight. The Court concludes it was. The officers were aware that there was an outstanding warrant for McKnight for a robbery committed at gun point; Officer Kelly knew McKnight drove a magenta Acura with special upgrades and Officer Kelly had last seen him in the Columbus Circle area of East Hartford a month prior. Under the circumstances, the officers were justified in acting cautiously and it was reasonable to conclude that McKnight might be carrying a gun and was willing to use it. There were articulable grounds for fearing danger. Moreover, Officer Kelly was aware that the registration on the magenta Acura had not been in McKnight's name nor did it match the car. As the Supreme Court has stated, "[t]he question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." *United States v. Sharpe,* 470 U.S. 675, 687, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Under the circumstances of this case, the Court finds there were sufficient objective grounds for stopping Valdez' car and the precautions the defendants chose to take were reasonable as a matter of law.

## 2. Due Process Rights

In plaintiff's memorandum in opposition to summary judgment, plaintiff does not make a separate argument under the Fourteenth Amendment Due Process clause of the United States Constitution. Rather, plaintiff consolidates his argument under both amendments in his memorandum. Accordingly, summary judgment is granted on this claim for the reasons stated above.

## 3. Equal Protection Rights

▮ Plaintiff fails to support his claim of an equal protection violation. The Equal Protection Clause requires state actors to treat similarly situated people alike. *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). "To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Id.* (citations omitted). A claimant must demonstrate "intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Huebschen v. Dept. of Health and Social Services,* 716 F.2d 1167, 1171 (7th Cir.1983).

▮ Plaintiff, a black Puerto Rican male, has failed to allege any class-based invidious discrimination which would support a cognizable claim under the Equal Protection Clause. "The guarantee of equal protection is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Mehta v. Surles,* 720 F.Supp. 324, 335 (S.D.N.Y.1989)(quoting *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784

(1980), *aff'd in part, vacated in part,* 905 F.2d 595 (2d Cir.1990). Plaintiff must prove not only that he was mistreated but that the mistreatment arose from some class-based animus. There is no evidence in the record from which a reasonable jury could find that plaintiff was discriminated against because of his race or ethnicity. Indeed, there is no evidence of foul language, no racial or ethnic slurs were uttered, and no excessive force was alleged. The undisputed evidence reveals that Mr. Valdez was stopped by the defendants because he was driving a vehicle similar to Samuel McKnight's in the neighborhood where that vehicle had recently been seen. It is clear that, whatever treatment was directed at plaintiff, it was directed at him solely as an individual and not as a member of any recognized class. Accordingly, summary judgment is GRANTED on plaintiff's equal protection claim under 42 U.S.C. § 1983.

## MONELL CLAIM–CITY OF EAST HARTFORD

■ Count Two against the City of East Hartford must also fail. A plaintiff must, as a preliminary matter, demonstrate that an individual defendant or defendants violated his constitutional rights. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Where, as here, a plaintiff is unsuccessful against defendants in their individual capacities, he will not be able to maintain an action against a defendant in their official capacities. A municipality, police force or its police chief are generally sued only because it is thought they are legally responsible for the identified defendants' actions; if individual defendants inflicted no constitutional injury, it is inconceivable that the municipality could be liable to plaintiff. *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). In the present case, plaintiff alleges, in part, that the "City of East Hartford, implemented and/or executed a municipal policy or custom of conducting unlawful stops, detentions and searches, which caused plaintiff's injuries and damages...." [Amend. Compl. Count II]. There is simply no authority for an award of damages against a municipality based on the actions of one of its officers where it is found that the officer inflicted no constitutional harm. *Id.* In light of the dismissal of the claims against the defendants in their individual capacities, the claims against the City of East Hartford cannot be maintained.

## PENDENT STATE LAW CLAIMS

■ In addition to the § 1983 claims, the complaint includes pendent state law claims, among them intentional infliction of emotional distress, negligent infliction of emotional distress, negligence against the individual defendants and negligent infliction of emotional distress and negligence, pursuant to Conn. Gen.Stat. § 7–465. Pendent jurisdiction is a doctrine of discretion; "its justification lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *accord Morse v. University of Vermont,* 973 F.2d 122, 127 (2d Cir.1992); *Castellano v. Board of Trustees,* 937 F.2d 752, 758 (2d Cir.), *cert denied,* 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991).

■ Generally, "where the federal claims are dismissed before trial ..., the state claims should be dismissed as well." *United Mine Workers,* 383 U.S. at 726, 86 S.Ct. 1130; *Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *see also Castellano,* 937 F.2d at 758; *Andreo v. Friedlander,* 651 F.Supp. 877, 883 (D.Conn.1986); *cf. Castellano,* 937 F.2d at 758 (pendent jurisdiction implicates comity concerns); *but cf. Finz v. Schlesinger,* 957 F.2d 78, 84 (2d Cir.) (where dismissal of a federal action involves findings related to state claim, court should address state issues); *cert. denied,* 506 U.S. 822, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992).

Following these principles, the Court declines to exercise pendent jurisdiction over the state law claims made against defendants.

## CONCLUSION

Accordingly, defendants' Motion for Summary Judgment [**Doc. # 50**] is **GRANTED**.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir.1989)(per curiam); *F.D.I.C. v. Hillcrest Assoc.*, 66 F.3d 566, 569 (2d Cir.1995).